[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Motion For Turnover Order
The plaintiff, Stanley Svea Building Supply, Inc., obtained judgment against the defendant, Yves Loubier, dba Loubier Drywall, on October 5, 1992. The judgment was for $3,150. The judgment is unsatisfied.
On February 15, 1993, a deputy sheriff served a copy of an execution on the defendant, Yves Loubier.
Later that same day, February 15, 1993, the deputy sheriff served the execution on G L Partners, Incorporated and its president, Gladstone Young.
Plaintiff claims that on February 15, 1993, G L Partners, Incorporated owed the defendant Loubier money sufficient to satisfy the execution. The amount to be satisfied as shown in the execution was $3,160.28.[1] G L Partners, Incorporated has not paid over anything in response to the execution.
Plaintiff then brought this proceeding which it styled "Motion For Turnover Order." [106] It seeks an order of this court directing that G L Partners, Incorporated turn over $1400[2]
to plaintiff. Plaintiff claims this proceeding and the relief sought is authorized by C.G.S. 52-365(b).
In this proceeding, G L Partners, Incorporated denies it was indebted to Loubier on February 15, 1993. It denies any liability to plaintiff.
When served with the execution on February 15, 1993, Loubier was doing drywall installation at a new house at a property known as known as Lot 22 Apple Hill Development, in Watertown, Connecticut. The new house was being built by G L Partners, incorporated of Watertown. Gladstone Young is president of G L Partners, Incorporated.
When served, Loubier became upset angry. He threatened to quit and walked off the job. CT Page 11337
Later that same day, February 15, 1993, the deputy sheriff telephoned Gladstone Young (she had had previous business with G L Partners, Incorporated and Gladstone Young) to arrange to serve the execution on him for G L Partners, Incorporated. During that conversation, Young stated he was going to the jobsite that day and that he had a check for Loubier. Transcript, 9/7/93, p. 11.
When served with the execution later that afternoon, Young stated to the deputy sheriff that he didn't owe Loubier that much, i.e. the amount shown in the execution.[3] Transcript, 9/7/93, p. 11.
The court must determine if G L Partners, incorporated owed the defendant any money on February 15, 1993, the date the execution was served on G L Partners, Incorporated. The court must also determine the amount, if any, owed. These determinations must be based on the evidence presented on July 12 and September 7, 1993.
The court has the statements made by Gladstone Young to the deputy sheriff on February 15 before there was much time for contrivance. These plainly acknowledge that G L Partners, Incorporated owed Loubier money at that time. Young immediately became concerned that Loubier would walk off the job if Loubier was not paid monies due him for his labors on Lot 22. To thwart this problem, Young contacted Sheehy (plaintiff's president) to try to work out an accommodation. Young proposed that plaintiff be paid $500 then by Loubier and thereafter at a rate of $250 per month until the debt was paid. Plaintiff rejected this solution. When Loubier learned that plaintiff would not accept this, he refused to do any further work. According to Young, Loubier said he "would rather write off the work he had already done at a loss" rather than work for nothing. Exhibit A.
Young's (G L Partners, Incorporated's) statements on February 15 to the deputy sheriff and the statements in the February 18 letter [Exhibit A] each warrant a finding that G L Partners, Incorporated owed Loubier some money on February 15, 1993. Nevertheless, G L Partners, Incorporated claims that it did non owe Loubier anything on February 15, 1993.
G L Partners, incorporated claims that it had a contract with George Owens to do the drywall installation for the house at Lot 22, Apple Hill. It produced a business card on the back of CT Page 11338 which was written:
 "Quote by George Owens Lot 22, $6.00 to hang $6.00 to tape $12/Sheet, 200 Sheets * * * 1/15/93 George Owens"
Respondent's Exhibit A.
Respondent G L Partners, incorporated claims this brief notation memorializes G L's subcontract with George Owens for the sheetrock work at Lot 22, Apple Hill. According to G L Partners, Incorporated, Loubier was merely an employee of Owens; G L Partners, Incorporated had no contract with and therefore no indebtedness to Loubier.
Owens testified that he was the subcontractor for this project and that he had hired Loubier to help him to do the work. He also testified to the loose arrangements prevalent among builders and sheetrock "subcontractors. Sometimes Owens had the subcontract with the builder and he would have another subcontract with Loubier to do the work. At other times the relationships were reversed; Loubier had the subcontract with the builder and Loubier would have a subcontract with Owens to do the work.
Young and Owens testified Owens had a subcontract with G L. The essence of that subcontract was on the back of plaintiff's president, Sheehy's, business card. Respondent's Exhibit A. The court does not accept Young's and Owens' testimony that Respondent's Exhibit A is a legitimate and contemporaneous memorandum of any agreement for Owens to do the sheetrock at Lot 22, Apple Hill. The court cannot believe that Young would depend on a person such as that presented by Young to be responsible for and do the sheetrock work on any project. This is particularly so as to Lot 22, Apple Hill where Young was so concerned about delay. The court does not believe that Owens was the sheetrock subcontractor for Lot 22, Apple Hill and that Loubier was merely working for Owens on that job.
The court finds that Loubier and G L Partners, Incorporated had an agreement whereby Loubier was to do the sheetrock work at Lot 22, Apple Hill. This conclusion is largely based on the CT Page 11339 statements of Young made to the deputy sheriff on February 15, 1993 and his statements in Exhibit A. Furthermore, Loubier's walking off the job is strong indication of his belief that G L owed him, not Owens, for the sheetrock work done to date on Lot 22, Apple Hill. And, as discussed below, the February 20, 1993 check for $1,170 payable to George Owens was then endorsed by Owens and deposited to Loubier's mother's bank account. This supports the court's conclusion that G L Partners, Incorporated owed Loubier money on February 15.
The amount of that indebtedness is not presented by clear and direct evidence.
Young told the deputy sheriff on February 15 he owed Loubier some money and was going to the work site to pay him that day. Young then attempted to work out an agreement whereby Loubier's debt to the plaintiff would be paid thereby keeping Loubier working on the sheetrock for Lot 22, Apple Hill. This proposed arrangement apparently fell through in the late afternoon of February 17, 1993. Loubier refused to do any further work on the job. On February 18, Young wrote to plaintiff's Sheehy saying "no monies will be paid to Mr. Loubier." Two days later, by check dated February 20, 1993, G L Partners, Incorporated "paid" Owens $1,170. Owens endorsed that check in blank. It was then deposited in Loubier's mother's bank account. Owen's testimony regarding the reasons for Mrs. Loubier's endorsement and check depositing are not found credible.
The total sheetrock job was estimated to be in the order of $2,400, i.e. 200 sheets @ $12. Respondent's Exhibit A. There was no evidence that any sheetrocking was done between the time Loubier was served on February 15 and the February 20 "payment" to Owens. The $1,170 paid on February 20 comports with Owens' statement of how much he allegedly paid Loubier, "Whatever he had hung. I think it was like half, or just a little bit." Transcript of Proceedings, 9/7/93, p. 18.
The court finds that G L Partners, Incorporated owed the defendant Yves Loubier at least $1,170 on February 15, 1993. The court does not have evidence from which it could infer any further monies were owed on that date. The sheet rock job was not completed as of February 15. The sum of $2270 was paid for the whole job. Exhibits B, C, and D. There is no evidence the payments by checks dated February 26 and March 10, 1993 was for work done by Loubier before February 15, 1993. CT Page 11340
G L Partners, Incorporated claims that C.G.S. 52-356b does not authorized the relief plaintiff seeks here. It is claimed that section does apply to a debt owing to a judgment debtor from a third party. The relevant portion of the statute reads:
 (a) If an execution is issued, the judgment creditor may apply to the court for an order in aid of the execution, directing the judgment debtor, or any third person, to transfer to the levying officer either or both of the following: (1) Possession of specified personal property that is sought to be levied on; or (2) possession of documentary evidence of title to property of, or a debt owed to, the judgment debtor that is sought to be levied on. C.G.S. 52-356b.
G L Partners, incorporated has not cited any case authority for its position. The court has found none. Apparently G L Partners relies on the language of the statute itself. The title of the statute, "Court order for transfer of specified property or evidence" tends to support that position. And the language, "(2) possession of documentary evidence of title to property of, or a debt owed to, the judgment debtor that is sought to be levied on" might, without too much stretching, be read as G L urges. The court initially believed the claim had merit. But 52-356b is a part of Chapter 906. Section 52-350a provides:
 52-350A. Definitions. For the purposes of this chapter and section 49-51, unless the context otherwise requires:
 (16) "Property" means any real or personal property in which the judgment debtor has an interest which he could assign or transfer, including (A) any present or future right or interest, whether or not vested or liquidated, (B) any debt, whether due or to become due, and (C) any cause of action which could be assigned or transferred."
With this definition of "property" at hand, G L's claim regarding the inapplicability of 52-356b to this situation must fail.
The Respondent, G L Partners, Incorporated, is ordered to pay to the plaintiff the sum of $1,170 plus interest at the CT Page 11341 statutory rate from February 20, 1993.
Parker, J.